Chief Justice Robertson
delivered the Opinion of the Court.
Robert H. Coleman, an old and forlorn bachelor, whose mind and body were, in no ’slight degree, impaired by long and habitual intemperance, having, some time in the year 1830, left the country, where he owned a farm, and become a hoarder in the house of Joshua Cross, an innkeeper in the town of Richmond, made to his landlord, in April, 1831, a conveyance of the legal title to *447 about two hundred acres of his farm, worth about sixteen hundred dollars, for the recited consideration of an agreement by the latter to pay for him two hundred and fifty dollars, which he owed to certain creditors, and to release to.fiim about one hundred dollars then due to himself for board and drink, and “ to board, wash for and lodge” him, and “ keep his'horse free of charge ” during his life — with the following condition: “Now, should the “ said Cross fail to discharge any of the liabilities afore- “ said, or fail to board, lodge, wash, and keep the horse “ of said Coleman, or refuse so to do at any time during “ his life, then this deed is to be void.” , .
In a short time after the execution of the deed, Cross removed to the land conveyed by it, where he kept Coleman and his horse, until some time in October, 1834, probably about the close of it, when Coleman went on foot to Virginia, whence it does not appear that he has ever returned.
In September, 1835, an action of ejectment was brought on the demise of Coleman, .for the purpose of evicting Cross from the land, on the ground, as attempted to be maintained on the trial, -that the deed had become void in consequence of breaches of the conditions which have been quoted.
On the trial of the case — after the plaintiff had proved facts conducing to show that he was, at the date of the deed, incompetent to make such a contract, and that Crdss had ordered him to leave his house, in September, 1834, and had, for one day, on one occasion, and perhaps on another, failed to provide sufficient food for Coleman’s horse, and, in some other minute particulars, otherwise failed strictly to fulfil his covenant to board, lodge and wash for him; and after Cross, also, had proved facts conducing to repel the inferences which might have been drawn from the opposing testimony — the Circuit Judge instructed the jury, among other things, that, if “ Cross “ had, at any time, failed to board, lodge and' wash for “ Coleman;, or had, at any time, failed to furnish feed for “ Coleman’s horse, as was usual and customary, the title “ of the land thereby vested in Coleman, and they must “ find for the plaintiff.”
*448 'This instruction presents the only question which wc deem it necessary now to consider.
It is difficult to ascertain and define, with a precision perfectly satisfactory, the true legal import and effect of the condition prescribed in the deed between the parties. This difficulty arises chiefly from the flexible and indefinite import of the common terms, “ board, lodge, and wash for,” &c. and the consequent uncertainty as to the' intent of the parties, as to what should amount to a failure, “at any time,” to board, lodge, and wash for, or keep the horse of Coleman.
Whilst the Court should not incline to such a strict interpretation as would lead to an unreasonable forfeiture, it should endeavor to give full effect to +he object of prescribing the condition.
Guided by this general principle, common sense and a practical acquaintance with the common affairs of common men, would, as we are disposed to think, incline to the conclusion that, though a refusal by Cross, “at any time,” to board Coleman at all or any longer, or to wash for him at all or any longer, or to keep his horse at all or any longei’, should be sufficient to render the conveyance, ipso facto, void — yet, nevertheless, a failure, at any time, or on any one occasion, to feed or “keep his horse,” or to furnish himself with food, or to wash his breeches, “in the usual and customary manner,” should not necessarily be deemed either a substantial or fatal breach of any stipulation in the deed, according to a reasonable, practical and just construction of the language and objects of the parties. To be entitled to a nullifying- effect, the failure should have been essential and habitual, or, in some material respect, inconsistent with the reasonable expectations and comfort of a man in Coleman’s condition, agreeing to live as a boarder for life in the family, and as a member of the family, of Cross, who was bound by a heavy penalty to provide for his horse necessary and usual subsistence, and for himself the common comforts of ordinary food, lodging, and washing. — ■ A mere casual omission, not very important or injurious, and such as may be expected to happen with men of or *449 dinary prudence, should not necessarily be deemed a forfeiture of the title to the land.
This may be as much as the Circuit Judge intended by his instructions; but they seem to import more, and especially, as other instructions having gone far enough, these were unnecessary unless they went still farther; and therefore, they might have been understood by the jury, as meaning that if even, as had been carefully proved, Cross had, for one single day, failed to provide for Coleman’s horse the usual and customary food, or if Coleman once, “at any time,” had not as-clean and, in every respect, as comfortable provision for lodging, or once, “at any time,” as good and abundant food, or once, “at any lime,” as good washing as was “customary” among those who board, lodge, and wash for others, for hire, then the land, that instant, became the property of Coleman. If- such be the constructive effect of these instructions, they were, in our opinion, erroneous. And even if that be not their object, they may have been, and probably were, delusive.
If, as was attempted to be proved, Cross’s wife was unreasonably and habitually cross to Coleman, so that he could not live comfortably in the family, and therefore left it, the condition in the deed was, in our judgment, violated; because it was certainly the duty of Cross to secure to Coleman a comfortable and reasonably peaceful and agreeable home.
Dr if, as was also attempted to be proved, Cross ordered Coleman to leave his house and seek shelter elsewhere, and he therefore went off; or, if he or his family endeavored, by systematic neglects or flouts, to render his situation uncomfortable, and induce him to abandon his household, we should not doubt that the title, under the deed, was thereby forfeited. It was to guard against such things that the condition was inserted in the deed. But had the jury been indisposed to find for Coleman upon any of those grounds, they may, nevertheless, have felt themselves instructed to find for him, because he had proved that once, for one whole day, Cross had failed to provide the “usual” food for his horse, or because once, when Cross and wife were absent about five days, *450 on a visit in an adjoining-comity, Coleman was, at their instance, fed, not in their house, but in that of a neighbor, distant from it two hundred yards.
As, therefore, injustice may have been done by the instruction we are considering, we feel it our duty to reverse the judgment of the Circuit Court on that ground, and to remand the case to that Court for another trial.